The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Our first case for today is 20-1992, In Re Vivint. Mr. Milliken, please proceed. Thank you. Good morning, your honors, and may it please the court, William Milliken for Vivint. This court has not had occasion to provide a definitive interpretation of the word new in Section 303's substantial new question of patentability standard, and it does not need to provide a definitive interpretation in this case, because if new means anything, it certainly means that a patent challenger cannot take an IPR petition that the PTO has already rejected, slap a new label on it, and then submit it in the guise of an ex parte reexamination request. But that is exactly what Alarm.com did here. Alarm.com filed three IPR petitions against Vivint's 513 patent, the third one week before the 315B bar. All three petitions were denied, and in denying the third, the board found that allowing such harassment of patent owners and frustration of Congress's intent, end quote. In a transparent attempted end run around that decision, Alarm.com then repackaged the failed IPR petition, nearly verbatim, into a reexamination request. This is a textbook example of the type of conduct the SMQ standard was enacted to prevent. Section 303, text, history, and... Counselor, can I ask you, is there anything that you think, I mean, obviously, the substantial new question is a statutory issue, yet the only thing you cite is the MPEP, and there's no real Chevron discussion here. So is there anything that you think informs the statutory interpretation? Is there any other context or legislative history that the term new has any meaning that we should, any statutory meaning that we should be focusing on? I think, Your Honor, that the most important context is the legislative history and purpose. This court has interpreted the SMQ standard by reference to its legislative history several times, first in PATLEX, and then in recreative technologies, and most recently in Swanson. And as the court explained in PATLEX, the SMQ standard was enacted to ensure that the type of patentee harassment that occurred in foreign reexamination systems would not happen in the United States. And the court observed in recreative technologies that the legislative history reflected a concern that the reexamination process would not become, would not create new opportunities for procedures that would harass the patentee and waste patent life. And so to the extent that context is necessary to interpret the word new, we think that context is supplied by the legislative history. This provision was enacted for the precise purpose of giving patent owners some measure of repose and not allowing the reexamination process to become a vehicle for sort of repeated cumulative attacks on a patent. And so in our view, the statute's plain language, the use of the word new in combination with that legislative history, resolves this dispute in our favor. And if that's the case, then it's unnecessary to look at the MPEP because, as this court has stated on multiple occasions, if the MPEP is contrary to the language of a statute, the statute, of course, controls. And briefly on the MPEP, Walmer, on the... Do you have a different analysis as to what's new and what's not new as it relates to Claim 14? So, Your Honor, the Director has not argued that Claim 14, as distinguished from the remainder of the reexamination request, presented a substantial new question. I think arguably... And the board below did not rest its decision on that basis either. I think arguably, if what had happened below, if the board said, no, most of this petition is not new because it's a copy of what was already filed in the 1091 IPR petition, but we have this one new issue, then I think we would be in a different place and we would be having a different argument. But the office has conducted this entire proceeding on the understanding that the entirety of the reexamination requests, you know, Shetty, Jowell, and all, with respect to all the claims, present a substantial new question of patentability. And so I think at this point, that issue is not... About Claim 14 is not properly before the court. And finally, just one point on the MPEP, as I said, we don't think it's necessary for the court to look at the MPEP here because we think the statute's text, read in light of the legislative history and purpose, compels a finding in our favor. But if you do look at the MPEP, we actually believe that it supports our position, not the director's. The MPEP explains that a substantial new question is not presented if the question has already been decided in an earlier concluded examination or review of the patent by the office. And then that term, in turn, is defined to include either a concluded trial by the TTAB, so that would be like if the question had already been resolved in a merit stage trial on the merits of the unpatentability issue, or, quote, any other contested office proceeding which has been concluded and which involves a patent, end quote. And we submit that our situation here plainly falls within that language. The 1091 IPR proceeding was a contested office proceeding. It has been concluded. It's over. And it... What else could you envision? I mean, there's a big debate over whether because IPR is specifically mentioned previously that somehow that shouldn't fall into that broader category. But, so, what other things would fall into the any other office proceeding category? So, the office, in their brief, identified interferences as a potential type of proceeding which might fall into that catch-all category, and we don't have any reason to disagree that that would fall in the catch-all category. But we think the catch-all category is also sufficiently capacious to include an institution stage decision in an IPR, a PGR, or a CBM. And the subsection D of that provision focuses on the trial stage, and so we think it's a reasonable inference that subsection E was intended to sweep more broadly and encompass decisions that are made at other stages of office proceedings. And I think that it's important here to kind of go back to the legislative concerns motivating the passage of this statute, which the MPP mentions in many of the provisions, respecting re-exams, but what Congress wanted to balance two competing goals. On one hand, they wanted to ensure strong patents, and they wanted to give the office an opportunity to provide a second look at any art that they might have missed the first time around. But they also wanted to protect patentees and to provide them with some measure of repose and not force them to sort of endure repetitive, cumulative, harassing attacks on their patents. And so that overarching- Mr. Milliken? Yes. Excuse me. Judge Schall here. I had one question, please. I assume, and forgive me if I'm putting words into your mouth, I assume that you would say, look, even if standing alone there was a substantial new question of patentability, nevertheless, we should prevail because the interest you just described of having patent owners not being harassed was not considered here, and there was an abuse of discretion. Is that your position, or am I going too far in stating your position? No, it is correct, Judge Schall, that we believe that even if you were to conclude that there was an abuse of discretion, we think we still win because the office had previously rejected this set of arguments from Alarm.com under 325D based on concerns about patentee harassment. And this goes to the second argument in our brief, and it's our position that it was arbitrary and capricious for a different arm of the office to then turn around and not apply 325D to a substantively identical set of arguments. So the short answer is yes, we believe that even if there is an S&Q here, we still prevail. Okay, thank you. Is it possible, this is Chief Judge Moore, is it possible that if we don't agree with you that we can necessarily conclude it was arbitrary and capricious, that we ought to on their legal conclusion that they couldn't deinstitute or, you know, sort of stop a reexam once it's been declared? That was something that concerned me, is that seems to me clearly a wrong statement of law, and I was concerned that it possibly infected their entire analysis. I agree with you, Chief Judge Moore, that that is a clear error of law, and I don't read the director's brief to be defending that. So our front-line argument is that this was arbitrary and capricious as a matter of law because the office applied the same statute to the same factual scenario and reached different results. But if you do not agree with us on that, then yes, we would agree that it would be appropriate to vacate this decision and remand for further analysis because I agree with your point, Your Honor, that that issue about whether the reexamination could be terminated, that seems to drive a large part of the analysis. The OPLA repeated that point on numerous occasions in both of the decisions denying the deinstitute petitions. And, Counsel, can you please elaborate with, you know, your arbitrary and capricious argument? There are, what was it, eight factors that the 1091, if I'm getting it right, IPR, considered and discussed in the context of determining the director would not exercise discretion because of concerns of harassment in that particular IPR. But not all of those are due. Is it your view that all of those same factors identically apply in the reexam context, that all of them ought to be part of the 325 analysis? I guess the agency argued to us that the 325D analysis was only sort of one of the portion or maybe more than one of the portion of those eight factors, but that more went into the 10091 determination than is present in this reexam context. So their argument is it's not arbitrary and capricious because the analysis between the two is potentially different. Yes, Your Honor. So I think that there are considerations not encompassed within 25D that the PTAS can consider in determining whether to institute an IPR. And they did consider a few of those in the 1091 decision. But I'd submit that if you read the decision, the 325D analysis is, was the primary driver of what the board was doing in the 1091 IPR. Out of five substantive pages of analysis on the discretionary denial issue, the board spent three of them on 325D. And then its discussion of factors that it sort of nominally put under the 314A general plastics bucket, that analysis also overlapped in large part with the 325D consideration that they considered the fact that Alarm.com had actually made arguments based on these references and prior IPRs. And so we'd submit that even though the office could and did have other considerations that it took into account, the primary one in the 1091 decision was Section 325D. All right, Mr. Milliken, why don't you save the rest of your time for rebuttal and let's hear from Mr. McManus. Thank you. Thank you, Chief Judge Moore. Can, can you all hear me? Yes. Yes. Thank you, Chief Judge Moore. And may it please the court. The definition of new in 303 and substantial new question has received significant judicial attention and congressional attention. The 2002 amendment to Section 303 made it spread that the position that's being taken here by Vavint is not correct under the SNQ standard. Congress explicitly told us that this is the text last sentence of 303 for Section A. The existence of substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the office or considered by the office. This court in Swanson addressed that 2002 amendment and rejected the position that Vavint asked the court to take here, namely that the focus of the SNQ determination after the 2002 amendment is on was the particular prior reference or the arguments previously evaluated. And we discussed this primarily in our brief at page 24 to 30, but Swanson in particularly starting around page 27. And what Swanson makes clear, this is at the pages of, in Ray Swanson at 1380 to 1381, the PTO needs to analyze what the quote PTO actually did. How did the examiner use, if at all, the particular reference or address the particular argument? And where there's been no substantive analysis by the PTO of a particular patentability question posed by the reexamination request, the SNQ standard is met. That's what the board explained at appendix pages 23 to 24 in affirming the examiner's decision in the same. There's been some discussion about whether the MPEP is consistent with the statute in precedent, and it is. We addressed this in our brief at 27 to 28. The MPEP reflects Swanson's focus under the SNQ standard of three on three on what was previously evaluated. If the particular art has not been evaluated by... But haven't we said that when something is presented that we assume that those whose job it is to evaluate it have actually looked at it? Well, that was the position, Your Honor, that this court took in Portola Packaging, and Congress especially overrode that determination in the 2002 amendment to ensure, and this is what Swanson confirms, while Congress wants the PTO to focus on in making its SNQ determination within simply whether the particular piece of art can be found in the record, it's was that particular piece of art previously evaluated. Again, this is at Swanson, 1380 to 1381. So Congress has told us that the position Vavin wants to take is not the correct one vis-a-vis the SNQ. The MPEP provision that is relied upon by the board and the examiner reflects the statutory language as well as this court's precedent interpreting it. Vavin's focus on the language about considered in the MPEP, we addressed this in our brief, but it doesn't help them because even the MPEP recognized that Spurge still has that focus on evaluation for Swanson and Section 303. So the MPEP is consistent. Can you move to the question of the authority to the institute? I'm actually kind of surprised that the board would make this kind of argument considering that mostly what the board is telling us is how broad their discretion and authority is. This, you don't point to anything that says shall, and frankly we've even said in some circumstances shall can mean may, and so the fact that there is a contemplation that once instituted it will move forward quickly doesn't seem to me to take away all inherent authority to de-institute. Judge O'Malley, just to make sure I understand your question, you're referring to the petition decisions addressing the 325D argument that Vavin raised? No, no, no. I'm referring to the broader question of whether or not there is any authority to de-institute a re-exam once it's instituted. Based on the SNQ determination, there is. That's why, you know, so long what the MPEP says is so long as the applicant or patent owner raises in a timely fashion with the examiner the question of whether or not there was in fact a proper SNQ that issue can be reached by the board. And the board reached that issue here. There's no holding. No, you're not understanding my point. You said that once it's instituted, the train has left the station and there is no way that you could ever de-institute, and I'm telling you my question is I don't understand how you can say that based on language that simply talks about the fact that once instituted it'll move forward at a quick or prioritized pace. That doesn't seem to me to take away all inherent authority to de-institute. With apologies, Your Honor, I just want to make sure we're on the same page. There's sort of two issues that Vavin has raised below. The first one was the question of whether there's a 303 SNQ and that issue was raised and adjudicated by the board on its merits. There's the corollary attempt by Vavin to essentially abrogate that SNQ determination by arguing that section 325D second sentence should have been used to essentially de-institute the order. Right, right, but what I'm saying is that you have a two-level argument in order to rebut the 325. One, as you say, 325 only applies to pre-institution. Considerations, but then you also say, and besides, even if it didn't, we don't have any authority to de-institute ever. Okay, Your Honor, so we are talking about the petition decision. So, what the petition decision explained, and I think Chief Judge Moore went to this about do we need to remand based on the petition decision's position that once instituted or once ordered, once we order a re-exam, 325D does not afford us the ability to essentially un-order it. And it's Judge Shull here. I'm not interrupting your flow in response to your question. I just want to make sure I understand the decision you're talking about. Is this the decision denying an expunging petition at 12,209? It is that one, Your Honor, as well as there's two petition decisions. There's a dismissal on June 15th of 2018, and that starts at appendix page 10841. And then Vavint re-petitioned on the issue, and they received a denial starting at appendix page 12229. Okay, I didn't want to interrupt your response. I just want to make sure I understood what we were talking about. Yeah, no, and apologies, and I think, Judge O'Malley, I'm going to what you're talking about. And in both of those decisions, the PTO, OPLA, took the position that because the language of 325D spoke only to the discretion to decline to order the re-exam, that once it had been ordered, we, as an entity, couldn't go back and reconsider that and de-order. I think it's fair to say that those petitions were raised as a binary matter. The statute language of 325D says the director has the discretion to decide not to order. But Vavint makes an excellent point that the power to decide includes the inherent power to reconsider. The point we were making in our brief was twofold, and this goes to Chief Judge Moore's question. One, Vavint's petition didn't give the petition office any particular reason to, quote, revisit and rescind the order to otherwise come out a different way on the 325D question. And to go to Judge Moore's question, even though those petition decisions did initially take that position of it's not an issue we can reach, they then went on to address the merits and explain why the particular relief that Vavint sought through those petitions was not warranted under 325D. And this is particularly at appendix pages 10849 to 853, where the petition dismissal explains why the 1091 institution, denial was not based in 325D. That same discussion occurs in the denial decision at appendix page 12215. Additionally, at appendix page 10851, this is in the initial dismissal decision, the petition decision explains why that particular, you know, sort of one paragraph analysis on the eighth factor in the 1091 institution decision denominated under 325D isn't actually a 325D analysis that it sounds in 314. Because all it really- Just Chief Judge Moore, one of my problems is the decision that you're referring to on say 10853, all right, which is sort of the culmination of the portion that you said did the work to explain why 325D should not result in reconsideration of the institution decision. The problem I have is it peppered throughout this decision from start to finish on many occasions is their wrong legal assessment that they didn't have the authority to, I'll call it de-institute or, you know, you more properly termed reconsider institution which I think is the appropriate legal way to do it. But they seem to have the belief that they didn't have the authority to do this. And even when they do what you think or are arguing to me, and I would argue the same thing if I were in your position, is a sort of separate independent reason apart from that. Namely, we review 325D and we don't think it meets the factors. At the end of that section on 10853, it says, which it says in I think five places in the opinion, for all the reasons set forth above, we determine not to do this. And my problem is they so frequently throughout this opinion say they don't have the authority to do it that, and then whenever they reach the kind of determination you would like me to view as basically an alternative holding, they sweep in everything they said before which included their own lack of authority. So I'm a little worried that these aren't truly independent separate determinations. I'm worried that this decision throughout from start to finish was rendered under the belief that the agency didn't have the authority to do what it was being asked to do. And that that overarching legal principle which is stated many times in this opinion unfortunately sort of infected the rest of the analysis. How do I know for sure that's not the case given that the very conclusion of the portion you pointed to says for all the reasons set forth above? Your Honor, I think sort of like a judicial decision, the most informed way to read this is to understand that these discrete decisions that the decision are engaging are in fact discrete.  The sort of re-encompassing language of for all the reasons set forth above. But even that sentence itself reaches a merits determination. This is at 10853. The determination by the office not to exercise its discretion under 35 U.S.C. 325D in the present ex parte reexamination proceeding is not inconsistent with inter partes review practice. That's a substantive conclusion. It's not a conclusion that could be drawn if we said well it's a question I can't even reach. So even that phrase for all the reasons set forth above, what precedes that culminating sentence is five or six pages particularly starting at 10847 and the subsection three clarification of office policy. That is all about the, I'll say the merits. It's all about what is the office policy vis-a-vis 325D in the wholly different circumstances of IPRs and reexams. What did the 10, oh I'm sorry. I understand your argument so let me ask you a little, I understand your argument and you're doing the best you can with what you've got. So let's just talk though for a minute about the merits of this 325D assessment because I mean, look you've got to defend this, it's your job. But how do you defend this? I mean you have one group, a board within the agency saying we're not going to proceed to evaluate these arguments because your behavior is tantamount to harassing the patent owner with repetitive serial filings. So we're not going to consider this. Then fast forward, you've got an examiner who more than a year later receives a virtually identical reexam petition. And without mention of 325D, without any analysis that would indicate that he or she thoughtfully considered whether discretion ought to be exercised in that case, it just goes forward on the merits. And then you have what feels to me, I'm just going to be blunt, a later OPLA decision that feels like an attempt to ex post justify something that feels virtually unjustifiable to me. Why did the examiner proceed in this case? Give me a good reason. Why the examiner proceeded in this case in light of what the board said in the 10-091 decision about harassment? I can give you several good reasons. The one good reason is the determination that occurred in the 10-091 institution decision is not a 325D determination. And it is a 314 determination. And we dragged the decision through in our brief and I won't reiterate it with the court. I think the important part is let's assume for the sake of argument that it's a level that 314 general plastics decision, right? And those general plastics factors are not the same factors that the board considers in the context of a 325D analysis. There is no 325D analysis in that 10-091 institution decision. But 325D does apply to these reexams, does it not? 325D is-it is essentially a statutory abrogation tool provided by Congress to be exercised at the director's discretion to, for example, decline to order a reexamination even though an SNQ exists. So we agree with that. And I see I'm out of time, but if I may continue to answer- No, please do. So let's assume for the sake of argument that even that 314-based discretionary denial in the IPR, 10-091 IPR, it reflected some level of policing patent harassment. That is not a determination that other means by which we might police quote patent harassment apply. 325D is a wholly different tool to-for the director's-for the director to use at his or her discretion to police these concerns. And these are competing policy concerns. I mean, part of what's important about the 10-091 institution decision and understanding it vis-a-vis the Vint's argument is what's animating that 10-091 314 discretionary denial is largely board resources. If you look at the general plastics factors, it's all about can the board get it done. The board has limited economy. And then the other factors are focused on the actions of the petitioner vis-a-vis the timing of the original presentation in the petition and then the subsequent petition. None of those factors animate the 325D factors under Beckton-Dickinson and then advanced bionics. Those are frankly more tantamount to a quasi-SNQ determination. What was evaluated before? How was it evaluated? Was there error in it? None of those 325D considerations can be found anywhere in that 10-091 institution decision. And I'm actually getting ahead of myself. We maintain- I mean, I still-you still haven't explained to me why. Why was this re-exam-why did it proceed? I think it proceeded because the examiner wasn't on the ball, wasn't paying attention, didn't read 10-91 or 10- what is it? 10-091. I don't remember the number, but didn't read it carefully. I just don't think that that entered into the examiner's calculation at all when assessing whether to move forward. There's no evidence in the opinion that it did, the decision. And-but why? Why would the office move forward with this? A determination was made that moving forward with this was tantamount to harassing the patentee. Why would that same logic not prevent them from moving forward with a re-exam that's virtually identical? Why wouldn't it animate the same decision? To answer, Your Honor, to the fact question, we believe the examiner's order on re-examination, which starts at page 976 of the appendix, reflects the 325-D type consideration. He runs through the- But you concede that the examiner did not cite 325-D, right? I concede-I do, Your Honor. I concede. Okay. But the point we're trying to make in our brief was the discussion that's in the examiner's order looks a heck of a lot more like a 325-D analysis even without the statutory number than what the board purported to do in the 10-91 institution decision. But to go to sort of your more policy-driven point, Chief Judge Moore, this is the point that the petition decisions made, and it's the point we reiterated in our brief. We have different forums in an IPR and a re-exam. And more to the point, those different dynamics can support the application of the director's discretion in a different manner in the context of those two forums. The context- They're not that different, though. I mean, the reality is I get the fact that one is adversarial and the other is not, but the point is, is the board going to keep entertaining more challenges? And I guess what I'm having a hard time with is can't parties assume that when agencies make determinations that they're going to be consistent in those determinations? Well, I think that we certainly strive for that kind of consistency. The point that the petition decisions make and that we reiterate in our brief is that when we make the discretionary determination of the 325D in the context of an IPR, that dynamic that's being driven there is not sort of the same. And even accepting there are some overlaps between the IPR and the re-exam, there are meaningful differences that can support the application of that director's discretion in different ways. And in particular, and this sort of gets back to the point that we made in our brief starting at page 44, we can't forget that we have a re-exam statute that has compulsory mandatory language. It says that if there is an SNQ standard, the patent will be re-examined, will be re-examined. And the director... Well, that goes back to the very question that I asked you before, which is does that statute really prohibit reconsideration? And I thought you said to judge more that it didn't. That the statute of, the SNQ statute of 303 and 304? Yes. Correct. We can reconsider whether the SNQ was properly made out. And here we made that determination. Are you saying, counsel, that 325D does not give the director the discretion to decide to reconsider an institution decision on the basis of harassment of the patentee? It gives the director the discretion to decide under the context of 325D whether or not the re-examination should have been ordered. And the point we're trying to make is what we have, there's a tension... Is your answer to my question yes? Does 325D give the director the discretion to decide to terminate a decision to institute a re-exam, to reconsider a decision to institute a re-exam on the basis of the re-exam amounting to harassment of the patentee? Yes. 325D contemplates that a re-examination... And you understand that that is separate from the SNQ question, correct? I mean, you've separated those clearly. Well, they are, but this sort of goes back to the point we're trying to make. We have a re-exam statute that tells us what we must do if an SNQ exists, and it exists here. And this sort of brings us back to our core point. But then you also have a statute that allows you to override that SNQ determination in cases of harassment, correct? It allows us, but that is the crucial point. I get it. Okay, now one thing you said earlier, counsel, I want you to justify one thing you said earlier. You said the examiner's opinion at, which I'm looking at in the appendix, I believe it's at 977, it starts, reads like a 325D analysis, but without simply mentioning it. Where? Where in the examiner's opinion does it read that way? Right. Your Honor, it reads more like a 325D analysis than the 1091 institution decision. Where? Where in the examiner's opinion does it say anything at all about something that looks like the factors ought to be considered under 325D? Since you represent it to the court, you believe it did that. Where does it do it? Starting at page 980, the examiner details the prosecution history. And even more importantly there, we see there's never been a substantive rejection. We only had an obstinance type rejection. No evaluation of prior art, no consideration of the same or substantially the same. And then on 981, the examiner details. So just to be clear, so the examiner's just random date-wise articulation of the prosecution history is what amounts to a 325D analysis? No, Your Honor, there's more to it. You need the facts, I mean, a 325D analysis is inherently fact-driven. And so the examiner is regaling us with the relevant facts, namely what happened during the examination? What did the examiner evaluate or not do? Then on 981, we have the same recitation of the facts for the three IPR decisions. And we recognize in particularly the 1091 IPR institution, which the examiner notes was purely disposed of on discretionary means. And then the detailed analysis on 981 says in view of this history, the SNQ exists. And in particular, when we look at page 982, right, the examiner notes during the 1091 IPR, shedding of view of Jalop Garten was discussed, but the PTAB did not make any patentability determination. But counsel, the reason I had you and I just walk through that exercise we did a minute ago was to separate the SNQ decision from the director's discretionary option to terminate on the basis of harassment, which you did very clearly and I think rightly. So all of the things you're pointing to now go to the examiner's analysis of SNQ. Not one of them go to any analysis of whether discretion ought to be exercised despite the presence of SNQ. Well, Your Honor, with due respect, I disagree. The reason why I disagree, if we look at the factors, the Becton-Dickinson factors and the advanced bionic factors, which to be clear, were specifically articulated for the board's consideration of 325D. As a general rule, they're not obligated to be used by the court in conducting a 325D, but to the extent they inform the analysis, when we look at the 325D factors, right, this is exactly the same kinds of consideration. What art was previously presented to the PTO? Was it evaluated? What did we do with it? If we evaluated it, was there any error? His point here is yes. Mr. McManus, excuse me. Judge Schall here. I didn't want to jump in on you in the middle of a sentence there, but we're into some overtime here. Let me just ask you this question, if I could, please. Assume, is it your position that an examiner can only consider the question, is there or is there not a substantially new question? Or do you say, yes, the examiner can consider that, but he or she can also consider whether granting reexamination would get us into a harassment situation? Correct, Your Honor, and that's what the NPEP says at 2242. Issues of 325D, and the petition decisions, you're right, the 325D issues are considered sort of up front in determining whether to order the reexamination under 3034. And they were considered here, and we ended up with a reexamination where all of the claims were determined to be unpatentable, and there's no challenge to that. These claims are unpatentable, and this patent has expired. The idea that we should somehow abrogate that where an SNQ exists because the director might have exercised his discretion to not start at all just doesn't sound in the policy underlying the reexamination statute or 325D. One last question, counsel. Is there any substantive difference between the content of the petition in the IPR and the reexam that was ultimately filed? There was for Claim 14. The written reference was utilized in the IPR request for 1091, whereas in the reexam request, they relied upon the Chang reference. Thank you very much. Thank you, counsel. I think that we should probably give some rebuttal time to Mr. Millikin. Mr. Millikin, please proceed. When the bell goes off, if you need to go a bit longer, you certainly can because we let opposing counsel go quite a bit longer. Thank you, Your Honor. I'd like to make four brief points in rebuttal. The first is that my friend said that there is, quote, no 325D analysis in the 1091 IPR decision. Respectfully, I just don't think that's correct. The board started analyzing 325D on page 11, and it continues clear over to page 14, which as I mentioned in my opening argument, is over half of the substantive analysis of the discretionary denial decision. Second, the director has not provided a meaningful reason why we should treat ex parte reexaminations and IPRs differently when it comes to application of 325D. My friend said that it's a policy decision on the part of the office. Well, I'd submit that Congress already made this policy decision. It wrote one statute, and it made that statute applicable to both proceedings without instructing that there be any difference. Third, at a minimum, Judge Moore, as you identified, we think that the OPLA decisions refusing to reconsider the reexamination grants under 325D must be vacated because they were clearly driven by OPLA's mistaken view. I see my time has technically expired. May I continue briefly? Sure. Go on. Keep going. They were clearly driven by OPLA's mistaken view that it did not have any authority to reconsider the reexamination decisions, and we have actually cataloged the, I believe, 11 places across the two decisions in which they made this assertion. That's at page 12, footnote 2 of the grade brief. And my fourth and final point is I'd like to respond to my friend's arguments about the 2002 amendment to the reexamination statute and this court's subsequent decision in Swanson. In 2002, Congress overruled this court's holding in Portola packaging that we can simply assume that the examiner considered all prior art that was before him or her for all purposes, for purposes of determining whether there is a substantial new question of patentability. And Congress said, no, instead, we do not want to preclude an SNQ simply based on the fact that a certain piece of prior art was previously before the examiner during initial examination. And so that's... Excuse me. Yes. Chuck Scholl here. I want to just get in one question, which I apologize. I forgot to ask you earlier. One of the issues in this case is this discussion as to whether or not the 1091 denial, the denial of the 1091 petition was based upon 314A or 325D. You're aware of that, obviously. Whichever way we rule in this case, whether we were to affirm or urge, or as you urge, reverse, is that issue really important? In other words, does it make any difference whether the 1091 decision had in mind 314A or 325D? That's my one question. I forgot to ask you before. So, Your Honor, I think that it is important for purposes of our arbitrary and capricious argument, because our argument is that two different arms of the same agency applied the same statute to the same facts and reached a different result. I don't think that it is important for the S&Q determination. And this actually goes to the fourth point that I wanted to make briefly, which is that regardless of what statutory provision the board denied the 1091 IPR petition under, the fact remains that the Shetty-Garten-Joao combination that was at issue in this reexamination request was already before the office, and the office already considered it and decided not to institute. And that directly tracks the language in this court's decision in Swanson that my friend cited, which said a substantive, and this is at page 1379, a substantial new question of patentability refers to a question which has never been considered by the PTO. The question here had been considered by the PTO in the 1091 decision, and the court, or the office should not have found an S&Q on that basis. If there are any further questions, I'm happy to answer them, but otherwise, we'll sit down. We thank both counsel. We take this case under submission.